UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-154-H

LORA MADONNA JACKSON, et al.                                              PLAINTIFFS

V.

E-Z-GO Division of TEXTRON, INC.                                           DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiffs' motion to remand raises some interesting questions about the status of bankrupt parties in determining federal diversity jurisdiction. Plaintiffs argued that bankrupt parties retain a viable role in the litigation and must be considered in any diversity analysis. The Court concludes, however, that the non-diverse defendants became nominal parties to this litigation after obtaining a bankruptcy discharge. Therefore, Plaintiffs' motion must be denied.

I.

Plaintiffs filed this case in the Jefferson County Circuit Court against Keith and Dianne O'Neil ("the O'Neils") and E-Z-GO Division of Textron, Inc. ("Textron"). Plaintiffs and the O'Neils both reside in Louisville, Kentucky. The claims arose from the death of Plaintiffs' daughter, Jordan Kori Jackson, who had been placed in the care of the O'Neils and accompanied them on a weekend trip. During the trip, Plaintiffs' daughter received fatal injuries after being thrown from a golf cart produced by Textron.

Several months into the lawsuit, on November 21, 2011, the O'Neils filed a petition for a no-asset bankruptcy under Chapter 7 of the Bankruptcy Code. On February 22, 2012, the Bankruptcy Court granted the O'Neils a discharge from all personal liability arising from this case.

Textron, a Delaware corporation with its principal place of business in Rhode Island, then removed the litigation to this Court on March 22, 2012, basing subject-matter jurisdiction solely on diversity of citizenship. Plaintiffs moved to remand on the grounds that diversity jurisdiction is absent and the notice of removal was untimely.[1]

## II.

Civil actions removed under 28 U.S.C. § 1441 must fall within the original jurisdiction of the federal district courts. Here, Defendant removed the case based on diversity jurisdiction alone. 28 U.S.C. § 1332(a)(2). "The current general-diversity statute, . . . 28 U.S.C. § 1332(a), thus applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996). When assessing the parties' citizenship, however, the Court must take into account only the real and substantial parties to the controversy; nominal or formal parties must be disregarded. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980).

For our purposes, a nominal party "is one who has no interest in the result of the lawsuit and need not have been made a party thereto." *Maiden v. N. Am. Stainless, L.P.*, 125 F. App'x 1, 3 (6th Cir. 2004) (quoting *Grant Cnty. Deposit Bank v. McCampbell*, 194 F.2d 469, 472 (6th Cir. 1952)). In Chapter 7 bankruptcy proceedings, a debtor is afforded the discharge "in exchange for liquidation of the debtor's assets for the benefit of his creditors." *In re Krohn*, 886 F.2d 123, 125 (6th Cir. 1989). The discharge "operates as an injunction against the commencement or

---

[1] Initially, the Court did not plan to decide this Motion to Remand as Plaintiffs had also filed a Motion for Leave to File a First Amended Complaint. Plaintiffs' First Amended Complaint proposed the joinder of the non-diverse owner of the golf cart. This non-diverse party would have destroyed the Court's subject-matter jurisdiction and forced a remand to state court. However, under pressure from the statute of limitations, Plaintiffs chose to file a separate action in state court against that individual and withdrew the pending motion in this Court.

continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). The operation of the bankruptcy laws, therefore, would seem to make the O'Neils nominal parties following their bankruptcy discharge under 11 U.S.C. § 727.

This analysis makes sense. The threat of monetary loss is usually the principal mark of a real party in interest. Because the O'Neils received a discharge for the specific claims in this case, Plaintiffs are enjoined from collecting any judgment against them. Consequently, the O'Neils have no motivation to vigorously defend against this lawsuit, leaving the diverse defendant, Textron, practically alone to litigate an action in an unfamiliar state court.[2]

For similar reasons, most courts have held that a bankrupt can only be a nominal party to the litigation of a discharged claim. *See In re Edgeworth*, 993 F.2d 51, 54 (5th Cir. 1993) (holding that a suit against a discharged debtor could only establish "nominal liability"); *In re Patterson*, 297 B.R. 110, 113-14 (Bankr. E.D. Tenn. 2003) (holding that the discharge "allows a creditor to proceed with an action against a debtor, in name only"); *In re Rodgers*, 266 B.R. 834, 837 (Bankr. W.D. Tenn. 2001) (holding that "it is permissible to commence or continue prosecution against a debtor as a nominal defendant").

In the absence of the O'Neils citizenship, complete diversity exists between Plaintiffs and Textron. Therefore, the Court has proper subject-matter jurisdiction to hear this case.[3]

---

[2] The discharge does not automatically dismiss the bankrupt from whatever lawsuits to which he or she may presently be joined. The discharge creates a nominal party, not a non-party. As such, the notice of removal should include the bankrupt as a party to the litigation, and the district court shall then determine if the party is nominal for the purposes of diversity. The O'Neils will be added as named parties to this case.

[3] In *Stewart v. Jennings*, another court in the Sixth Circuit found that a discharged debtor was a real, rather than a nominal, party to a suit establishing the liability of a third-party insurer. No. 1:10-CV-158, 2010 WL 3009536, at *3 (E.D. Tenn. July 28, 2010). However, the Court disagrees with that conclusion. A discharged debtor, while possibly necessary, has no interest in the outcome of the litigation, similar to the status of an essential

III.

Notwithstanding the O'Neils status as nominal parties, Plaintiffs argue that Textron's Notice of Removal was untimely filed. "[I]f a case stated by the initial pleadings is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). When initially filed, this case lacked diversity for proper removal, but Textron asserts that the discharge constituted an "order or other paper" starting a new thirty-day period in which removal could occur. The Court agrees that under both of the following analyses the Notice of Removal was timely.

A.

When defining an "order" for removal purposes, most courts have ruled that the order must emanate from the same litigation, not an unrelated case. *Burns v. Prudential Sec., Inc.*, 450 F. Supp. 2d 808, 813-14 (N.D. Ohio 2006). However, *Doe v. American Red Cross* held that an "order" could arise from a unrelated case if it "came from a court superior in the same judicial hierarchy, was directed at a particular defendant and expressly authorized that same defendant to remove an action against it in another case involving similar facts and legal issues." 14 F.3d 196, 203 (3d Cir. 1993); *see also Young v. Chubb Group of Ins. Cos.*, 295 F. Supp. 2d 806, 808 (N.D. Ohio 2003) (applying the same test). Later, the Fifth Circuit modified the express authorization prong of this test by explaining that an unrelated case which implicitly created the effect of removability could be an "order." *Green v. R.J. Reynolds Tobacco Co.*, 274 F.3d 263,

---

witness. Also, the *Scott* court relied on *In re Patterson*, which specifically states that such an action can be brought "in name only." *Patterson*, 297 B.R. at 113-14.

268 (5th Cir. 2001).

Though it is difficult to conceive of an injunction abrogating Plaintiffs' specific claims against the O'Neils as an unrelated decision, the Court will proceed with the analysis under *Doe* and *Green*. While bankruptcy courts do not belong to the same judicial hierarchy as state courts, discharge orders are binding on actions in state courts. *See* 11 U.S.C. § 524(a)(2). The O'Neils' discharge addressed their role as defendants to these exact claims and implicitly created removability by making them nominal to the litigation. Under this set of facts, the discharge injunction was an "order" pursuant to 28 U.S.C. § 1446(b)(3).

B.

In the alternative, the bankruptcy discharge could also be considered an "other paper" allowing removal. "[O]ther paper" is usually interpreted under the voluntary-involuntary rule, which prescribes that the document making the case removable must be the product of a voluntary act of the plaintiff, such as a voluntary dismissal or answers to a deposition. *Cobalt Mining, LLC v. Bank of Am., N.A.*, No. 3:07-CV-589-S., 2008 WL 695887, at *2 (W.D. Ky. Mar. 12, 2008); *Wiacek v. Equitable Life Assurance Soc'y*, 795 F. Supp. 223, 225 (E.D. Mich. 1992). The voluntary-involuntary rule is meant to safeguard the integrity of federal jurisdiction. *Wiacek*, 795 F. Supp. at 225.[4]

However, the rationale behind the voluntary-involuntary rule does not apply here.[5]

---

[4] For example, the involuntary dismissal of a non-diverse defendant by a state court would be an appealable decision. If that dismissal was reversed after the case had been removed to federal court, the federal court would be obligated to remand. The voluntary-involuntary rule promotes judicial economy and a stable line of jurisdiction.

[5] Textron argues that Plaintiffs voluntarily abandoned their action against the O'Neils by failing to file an official claim with the Bankruptcy Court. However, in a no-asset bankruptcy, creditors are not required to file a claim until they receive notice that the estate has some value. *In re Madaj*, 149 F.3d 467, 469 (6th Cir. 1998) (citing

Plaintiffs had fourteen days following the entry of the discharge injunction to appeal that order of the Bankruptcy Court. Fed. R. Bankr. P. 8002(a). Since this fourteen-day period expired, there is no threat of the discharge being overturned and diversity jurisdiction subsequently destroyed. As such, the Court refuses to apply the voluntary-involuntary rule and concludes that the discharge was also an "other paper" permitting removal.

Whether considered an "order" or "other paper," the O'Neils' bankruptcy discharge initiated a new thirty-day period in which Textron could remove. Textron filed its Notice of Removal within thirty days of learning that the O'Neils received a discharge. This discharge made the O'Neils nominal parties "who need not join the removal petition in order to make it effective." *MJR Int'l, Inc. v. Am. Arbitration Ass'n*, No. 2:06-CV-0937., 2007 WL 1101250, at *3 (S.D. Ohio Apr. 11, 2007) (citing *Certain Interested Underwriters at Lloyd's, London v. Layne*, 26 F.3d 39, 42-43 (6th Cir. 1994)). Therefore, the Court concludes that Textron followed the correct procedures and that the notice was timely filed.

For the reasons stated in its Memorandum Opinion and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that LORA MADONNA JACKSON'S Motion to Remand is DENIED.

---

Fed. R. Bankr. P. 2002(e)). Because the O'Neils' estate contained no value for the unsecured creditors, failing to file a bankruptcy claim does not meet the requirements of the voluntary-involuntary rule.

cc: Counsel of Record