UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-154-TBR

LORA MADONNA JACKSON, *et al.*,                    PLAINTIFFS

v.

E-Z-GO Division of TEXTRON, INC., *et al.*,        DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

The E-Z-GO Division of Textron Inc. ("Textron") wants this Court to grant a protective order preventing the discovery of what it believes to be (1) irrelevant documents and (2) confidential internal recordkeeping procedures and its in-house legal staff's attorney work product. Lora Madonna Jackson believes, however, that the requested discovery is proper and should be allowed in full. After careful consideration, the Court believes the protective order is appropriate to an extent and so grants Textron's request in part.

I.

In July 2010, fifteen year-old Jordan Kori Jackson went on a golf cart joyride with three other teenagers; none were licensed drivers. Jordan sat in the front passenger seat. While driving down a steep hill, the cart overturned.[1] The driver and rear passengers sustained minor injuries. Tragically, Jordan's injuries proved fatal.

The golf cart was a 1993 E-Z-GO PC-4X.[2] It had no speed regulator and lacked all-wheel brakes. Lora Madonna Jackson, Jordan's mother, brought suit against Textron alleging

---

[1] There is conflicting deposition testimony of the accident's survivors about what happened. Questions remain as to how the driver operated the golf cart—whether the driver was turning the steering wheel repeatedly back and forth and whether the driver applied the brakes.

[2] E-Z-GO discontinued the PC-4X family of vehicles in January 1995. E-Z-GO replaced it with successive designs of vehicles—including the "Medalist" family—that varied in suspensions, chassis, and power systems.

that the golf cart's design was defective, and that Textron failed to provide adequate warnings. Plaintiff seeks discovery of incident reports Textron collected over the years. She believes this discovery will show Textron was aware of these supposed defects—the incidents reflect accidents with other E-Z-GO products over the years. In his deposition, James A. Fisher, E-Z-GO's Manager of Reliability Engineering, explained that as he became aware of incidents involving Textron's products, he would enter the information into a legal case management database called "Team Connect." The information in the database came from internet publications and the like, and it apparently also included comments on the incidents from Fisher and his staff. After Jackson moved to compel the release of an Excel file containing the information from Team Connect, the Court granted the motion "in part, to the extent that [Textron] shall produce information on all incidents that Jim Fisher or his predecessor collected and/or entered into the Team Connect database." D.N. 55, PageID # 907. Textron complied with the order and produced the information through supplemental responses made in July and October 2014. Jackson asserts that what Textron produced may still not be a full representation of the relevant information Textron has. She argues that, even with the order to compel, Textron's productions have been improperly constrained. Since the supplemental responses, the parties have disagreed over the scope of discovery; Jackson now wants to inquire into E-Z-GO and the Textron legal department's recordkeeping. Though the parties collaborated on these disputes without the Court's intervention, their talks fell short of a compromise.

During a March 2015 teleconference amongst the parties, Jackson conceded that pure warranty claims should be excluded from the search of prior incidents. The parties could not agree on other concessions. Textron believes that her requests should be pared down: For example, Textron thinks that files about fire loss, vehicle-to-vehicle collisions, and other

2

incidents not similar to Jordan's accident should be excluded. It feels that the incident discovery Jackson seeks is too broad and unlikely to lead to relevant information. Jackson, though, believes she needs more information about Textron's recordkeeping before she can appropriately narrow her requests. To that extent, she gave notice of her intent to take a Federal Rule 30(b)(6) motion to inquire into:

1. Textron's methods of recording information of any sort, whether electronic, documentary, or otherwise, regarding E-Z-GO Incidents.

2. The raw number of E-Z-GO Incidents, totaled by calendar year.

3. The raw number of suits regarding E-Z-GO Incidents filed by calendar year.

4. The year in which Textron began utilizing any form of electronic spreadsheet or database or similar application to compile information regarding E-Z-GO Incidents.

5. To describe the applications identified in Topic #4, including the name by which it was referred, the length of time the application was used, the fields in which data was collected, and the persons (by job description, not name) who utilized any part thereof;

6. The periods of time in which Textron has used the Team Connect database and all electronic spreadsheets, databases, and other applications to record information regarding E-Z-GO Incidents;

7. Whether Textron maintains separate electronic spreadsheets, databases, and other applications for warranty claims versus other types of incidents, complaints, lawsuits, or claims.

D.N. 65-3, PageID # 944.

Textron worries that these areas of inquiry do not even address discoverable matters relating to the golf cart at the heart of this suit. It complains that Team Connect contains "the mental impressions and opinions of legal staff in making those entries." D.N. 65-3, PageID # 945. It has expressed its willingness to turn over particular documents relevant to Jordan's accident, but it believes the current scope is overbroad and so desires a protective order.

II.

"Parties are entitled to the discovery of any 'non-privileged matter that is relevant to any party's claim or defense.'" *Long John Silver's Inc. v. Nickleson*, No. 3:11-CV-93-H, 2013 WL 870443, at *1 (W.D. Ky. Mar. 7, 2013) (citing Fed. R. Civ. P. 26(b)(1)). But "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). Protective orders may forbid certain discovery, specify terms of discovery, or even forbid inquiry into certain matters or limit the scope of those inquiries. *See* Fed. R. Civ. P. 26(c)(1)(A)-(H). Courts may limit the frequency or scope of discovery that would otherwise be permitted if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues." Fed. R. Civ. P. 26(b)(C)(iii). "[I]t is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994) (citation omitted). And if "proof of relevancy or need is not established or if discovery would nevertheless be unreasonable, oppressive, annoying, or embarrassing, or otherwise unduly injurious, discovery should be denied." *Long John Silver's*, 2013 WL 870443 at *1 (citation omitted).

III.

The first dispute the Court must address relates to the informational scope of requested discovery. Based on the briefings, it appears that the parties' discovery talks failed in large part because the parties could not agree on how to limit the scope of production regarding the

4

incident files Textron maintains. Jackson contends that it is too early at this stage to erect limits. Until she has had more opportunity to inquire, she feels setting production parameters—that is, exclusions relating to incident types, dates of incidents, and types of vehicles—is untimely. Textron notes that it has over twenty years' worth of information, most of which is irrelevant to the current litigation. For example, some of the data it has collected relates to incidents involving fire, collisions with automobiles, and collisions with pedestrians. None of this information, Textron argues, would be relevant to Jackson's claims that the golf cart was defectively designed and that Textron failed to provide adequate warnings.

Textron is correct. Discovery can be rather broad: Courts may order discovery of any matter relevant to the subject of the litigation. *See* Fed. R. Civ. P. 26(b)(1). And the "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. But the breadth of discovery is not limitless. To be discoverable, something must be both *relevant* to the litigation and "reasonably calculated" to lead to admissible evidence. Jackson seeks evidence to help her prove that Textron had notice of the supposed defects that she believes contributed to the golf cart accident. In briefing, she specifically lists four design features of concern: rear-wheel-only braking as opposed to all-wheel-braking, speed governors, speed retardation devices, and over-steer technology. D.N. 71, PageID # 993. Thus, only incidents that could have given Textron notice about these supposed problems are relevant to her proving this part of her case, and the Court will fashion its protective order accordingly. Textron need only turn over incident reports and the like that relate to rear-wheel-braking, speed governors and speed retardation devices, and over-steer technology.

5

Textron raises another interesting point: In Kentucky, product liability plaintiffs must prove that the product was defective when the manufacturer *sold* it. *Ostendorf v. Clark Equip. Co.*, 122 S.W.3d 530, 533 (Ky. 2003). Textron raises this fact as reason why its production should also be temporally limited. In other words, if the product had to be defective at the time of *sale*, Textron implicitly argues that any incident reports from after the 1993 sale of the golf cart should be excluded. This is a step too far. Although Textron is right that Kentucky law includes no duty to retrofit, *see id.*, Kentucky law does impose a duty on manufacturers to continue to review product designs even after sale. In situations where—after a sale—a manufacturer comes to know or should have known about a defective product, then that manufacturer must "make an effort to notify the purchasers." *Clark v. Hauck Mfg. Co.*, 910 S.W.2d 247, 251 (Ky. 1995) (reversed on other grounds). Jackson alleges both that the golf cart was designed defectively and that Textron failed to provide adequate warning. As Kentucky law holds that manufacturers could have a post-sale duty to warn of later-learned-of defects, it would be improper to impose a temporal limit on discovery related to rear-wheel braking, speed governors and speed retardation, and over-steer technology accidents.

The Court must also consider to what extent Jackson can inquire into the Team Connect database. The inquiries Jackson wants to make are laid out in in the Rule 30(b)(6) notice described above. Two of the inquiries—raw number of incidents per year and raw number of lawsuits filed against Textron per year—are irrelevant to Jackson's suit, and so the Court will prevent them. The propriety of the other inquiries, though, is less clear.

Jackson wants to learn more about how Textron records information of any sort about E-Z-GO product incidents, the year Textron began compiling that information, descriptions of how that information was compiled and who compiled it, the period those compilations have been

6

kept, and whether any separate data systems have been maintained. That is, Jackson wants to know more about Team Connect. Textron protests that the information sought is both privileged and under the aegis of the work product doctrine. It apparently believes that since the information in Team Connect is privileged and therefore non-discoverable, Jackson should not be permitted to depose a Textron representative on these matters. Jackson counters that the information is neither privileged nor work product. She says it is not privileged because it is comprised of information from third party sources, so it does not represent confidential communications between Textron and its lawyers. And she contends it is not work product because Textron keeps the database in the normal course of business and not because of the prospect of litigation.[3] The Court is not yet convinced of either position. For now, the Court will allow Jackson to conduct her deposition. She may inquire as to the origins and processes of Team Connect—as well as whether any separate compilation systems have been kept—but, for now, she may not inquire into the actual contents of the system until the Court is presented with a clearer understanding of the system's nature.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Textron's requested protective order is GRANTED to the extent that Jackson MAY NOT:

- Inquire about any E-Z-GO incidents not related to rear-wheel-only braking, speed governors, speed retardation, or over-steer technologies;

- Inquire into the raw number of E-Z-GO incidents per year or the raw number of suits against Textron per year.

IT IS FURTHER ORDERED that Jackson MAY conduct a corporate deposition to inquire as to the origins of Team Connect, the processes Textron uses to maintain the system, the

---

[3] To the Court, it seems possible that Team Connect could be kept for both business and litigation purposes. The ambiguity likely augurs for at least superficial inquiry into the character of the database.

*types* of information entered into the system, and whether Textron maintains any separate systems. She MAY NOT, however, inquire into the *specific* contents of the system until more is known about the character of the contents.

      IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 636(b)(1)(A), this matter is referred to Magistrate Judge Colin Lindsay on all discovery motions.

cc:    Counsel of Record