UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:12-CV-00154-TBR

LORA MADONNA JACKSON, *et al.*,   PLAINTIFFS

v.

E-Z-GO Division of TEXTRON, INC., *et al.*,   DEFENDANTS

**MEMORANDUM OPINION**

Defendant, E-Z-GO Division of Textron, Inc. filed a motion requesting the Court to reconsider its motion in limine ruling permitting Plaintiffs to introduce evidence and testimony of alleged spoliation of evidence during the trial of this matter. [DN 223 (Motion for Reconsideration); DN 199 (Memorandum Opinion and Order).] Due to the quickly-approaching trial scheduled in this matter and the Court's desire to give the parties as much notice as possible of its decision, the Court issued a brief Order granting Defendant's motion and explaining that a Memorandum Opinion would issue shortly after. In the meantime, Plaintiffs responded, [DN 228.] Now fully briefed, this matter is ripe for adjudication. For the reasons explained in detail below, the Court will adhere its prior ruling **GRANTING** Defendant's motion to reconsider, [DN 223.] Evidence of Defendant's retention, or lack thereof, of records of prior incidents involving its vehicles from before 2001 will not be permitted at trial.

FACTUAL AND PROCEDURAL BACKGROUND

The Court has recited the full facts of this case at length in previous opinions. [*See* DN 198; DN 199; DN 230.] In short, the Plaintiffs in this action brought suit against Defendant E-Z-GO Division of Textron, Inc. following a rollover incident involving an electric vehicle that led to the tragic death of fifteen-year-old Jordan Kori Jackson on July 25, 2010 in Grayson County, Kentucky. [*See* DN 1-2 (Complaint).] The golf cart/personnel carrier-type vehicle (the "Vehicle")

1

was a 1993 E-Z-GO PC-4X manufactured and sold by Defendant. In this suit, Plaintiffs allege that the Vehicle's design was defective, that E-Z-GO failed to provide adequate warnings regarding its safe operation, and that E-Z-GO breached express and implied warranties. [*See id.* at 4–7.] This jury trial in this matter began on August 2, 2018.

During the pretrial phase of this case, Defendant filed a motion in limine to exclude testimony by witnesses or references by counsel to any spoliation of evidence Plaintiffs allege Defendant may have engaged in. [DN 165.] Specifically, Plaintiffs allege that Defendant spoliated evidence "in 2004 when it implemented its TeamConnect litigation database and destroyed all of the data before 2001, in its previous litigation database, Corporate Law Pack." [DN 194 at 2.]

In its initial ruling on Defendant's motion in limine, the Court agreed with Defendant that "Plaintiffs have not made the requisite showing of fault, whether through negligence or intent, necessary for an adverse inference instruction" as to spoliation. [DN 199 at 7.] However, the Court further stated:

> to the extent Plaintiffs are unable to provide the jury with examples of other incidents that may have been recorded prior to 2004, Plaintiff wishes to inform the jury why such records are unavailable. The Court finds this evidence is relevant and admissible under Rule 401 of the Federal Rules of Evidence. Accordingly, the Court will allow Plaintiffs to put on evidence of what they believe was spoliation of evidence in 2004.

[*Id.* at 9.]

Defendant then filed a motion requesting the Court to reconsider that ruling. [DN 223.] The Court issued an Order granting the motion and holding that it would preclude evidence of alleged spoliation at trial. [DN 225.] Thereafter, the Court allowed Plaintiffs the chance to respond. Plaintiffs did so, [DN 228], and having now read all parties' arguments and reviewed the applicable law, the Court issues the instant Memorandum Opinion fully explaining its decision.

DISCUSSION

"In 2004 Textron converted its Legal Department matter management system from a discontinued and increasingly inadequate management system called 'Corporate LawPack' to the current management system named 'TeamConnect.'" [DN 165-1 at 2–3.] Defendant argues that, at the time, it had a document retention policy in place "relating to 'Litigation Files' [which] was dated 1997, and [that policy] preceded the data transfer [conducted in 2004] by 7 years and the accident in this case by 13 years." [*Id.* at 8.] Pursuant to that 1997 "records management policy," Defendant's practice was to "maintain[ ] litigation files only for three years following closure" of a claim or lawsuit. [*Id.*]

> Thus . . . only information relating to claims or lawsuits that were open in 2004, or those that had been closed within the three years prior to the 2004 implementation (including matters that commenced well back into the 1990's, over a decade before this accident ever occurred), were entered into the TeamConnect Legal Matter Management System.

[*Id.*] In its motion in limine, Defendant argues that "[t]he fact that the Textron Legal Department followed its records management policy and did not transfer litigation files closed prior to 2001 (*i.e.* three years) when it implemented in 2004 is not improper." [*Id.* at 10.] Defendant contends that "[t]here was no business need or requirement for the Textron Legal Department to retain such closed records. Files were preserved for all pending litigation and, more significantly, there was no duty to preserve evidence for this case because the accident and accompanying lawsuit had not yet occurred." [*Id.*] Moreover, Defendant relies on the United States Supreme Court's recognition that "'[d]ocument retention policies,' which are created in part to keep certain information from getting into the hands of others, including the Government, are common in business . . . It is, of course, not wrongful for a manager to instruct his employees to comply with a valid document

retention policy under ordinary circumstances." *Arthur Andersen LLP v. United States*, 544 U.S. 696, 704 (2005).

## A. Spoliation of Evidence

In their response to Defendant's motion, Plaintiffs argue that discovery in this case "has been an uphill battle for Plaintiffs since the first set of discovery was served on Textron on August 23, 2011." [DN 194 at 1.] Plaintiffs contend that Defendant acted wrongfully in 2004 by "destroy[ing] all of the data before 2001." [*Id.* at 2.] The way Plaintiffs see it,

> [t]he reason why Textron purged the critical pre-2001 incident data was to prevent plaintiffs in products liability cases throughout the country, including the instant action, from obtaining proof that Textron was well aware of the defects and still failed to design out the defects or adequately warn consumers and users of its products of their unreasonably dangerous and defective nature.

[DN 228 at 11.] And, according to Plaintiffs, "there is no doubt that the Law Department knew the significance of the records it was destroying." [DN 194 at 2.] In support of this argument, Plaintiffs cite to the deposition testimony of John Rupp, then-associate counsel for Textron, who testified that he "knew that other incidents could be admitted against Textron in civil suits, and could be prejudicial to Textron's defense." [*Id.* (citing DN 208-1 at 9 (Rupp Deposition).] In his deposition, Rupp testified that he was aware that the issue of prior incidents comes up in products liability cases "probably . . . two-thirds of the time." [DN 208-1 at 9 (Rupp Deposition).]

"Spoliation is 'the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction.'" *Ross v. Am. Red Cross*, 567 F. App'x 296, 301–02 (6th Cir. 2014) (quoting *United States v. Copeland,* 321 F.3d 582, 597 (6th Cir. 2003)). In 2010, the Sixth Circuit explained the standard for giving an adverse inference instruction on the basis of spoliation as follows:

> [A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an

4

obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010). In adopting this standard, the Sixth Circuit further elaborated:

> Thus, an adverse inference for evidence spoliation is appropriate if the Defendants " 'knew the evidence was relevant to some issue at trial and ... [their culpable] conduct resulted in its loss or destruction.' " *Hodge v. Wal–Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir.2004) (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir.1995)). This depends on the alleged spoliator's mental state regarding any obligation to preserve evidence and the subsequent destruction. An obligation to preserve may arise "when a party should have known that the evidence may be relevant to future litigation," *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir.1998), but, if there was "no notice of pending litigation, the destruction of evidence does not point to consciousness of a weak case" and intentional destruction, *554 *Joostberns v. United Parcel Servs., Inc.,* 166 F. App'x 783, 797 (6th Cir. 2006) (unpublished opinion) (applying federal law). "[T]he 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed 'knowingly, even if without intent to [breach a duty to preserve it], or *negligently.*' " *Residential Funding Corp.,* 306 F.3d at 108 (quoting *Byrnie,* 243 F.3d at 109).

*Id.* at 553–54. Rule 37(e) of the Federal Rules of Civil Procedure, which was amended to its current version in 2015, after the Sixth Circuit's decision in *Beaven*, likewise provides guidance on spoliation measures. Specifically, Rule 37(e) provides:

> **(e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > **(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> >
> > > **(A)** presume that the lost information was unfavorable to the party;
> > >
> > > **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or

> **(C)** dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). Rule 37(e) permits the imposition of a sanction only if, at a minimum, "electronically stored information that *should have been preserved in the anticipation or conduct of litigation* is lost because a party failed to take reasonable steps to preserve it." Fed. R. Civ. P. 37(e) (emphasis added). Further, it permits an adverse inference instruction to the jury "*only upon finding* that the party acted with the i*ntent to deprive another party of the information's use in the litigation.*" Fed. R. Civ. P. 37(e)(2) (emphasis added).

The Court initially held that Plaintiffs had not made the requisite showing of "intent" to warrant an adverse inference instruction under Rule 37(e), but stated that it would allow Plaintiffs to put on evidence of what they allege is spoliation at trial. However, upon second examination, the Court notes that Rule 37(e) permits the Court to "order measures no greater than necessary to cure the prejudice" *only* "[i]f electronically stored information that *should have been preserved in the anticipation or conduct of litigation* is lost because a party failed to take reasonable steps to preserve it" *and* there is a "finding [of] *prejudice* to another party from loss of the information." Fed. R. Civ. P. 37(e)(1) (emphasis added). Courts have recognized that "[s]uch measures may include, allowing the injured party to comment on or introduce evidence about the lost data at trial." *Yoe v. Crescent Sock Co.*, No. 1:15-CV-3-SKL, 2017 WL 5479932, at *9 (E.D. Tenn. Nov. 14, 2017).

Upon reconsideration, the Court does not find that Plaintiffs have satisfied their burden of showing that the information not transferred to TeamConnect "should have been preserved in the anticipation or conduct of litigation," that Defendant "failed to take reasonable steps to preserve it," and that Plaintiffs suffered prejudice as a result, all of which Rule 37(e)(1) requires before the Court can take *any* measures to cure the prejudice. *See* Fed. R. Civ. P. 37(e)(1). As the Court noted

6

above, such measures include allowing Plaintiffs introduce evidence about the loss of the information at trial. *See Yoe*, 2017 WL 5479932, at *9.

The Court agrees, as Defendant argues, that it had no reason to anticipate the instant litigation when it made the transition to TeamConnect in 2004. Though Plaintiffs emphasize the fact that Rupp acknowledged during his deposition testimony that "incidents deemed substantially similar or reasonably similar can be admitted against" Defendant in civil lawsuits, this is not the same as showing that the information "should have been preserved *in the anticipation or conduct of litigation*." Fed. R. Civ. P. 37(e). Specifically, Rupp's testimony does not establish that he was *aware* of an alleged defect, anticipated actual, upcoming litigation on the basis of that alleged defect, and then deleted the information anyway. The Court can envision a scenario in which spoliation is found when there was evidence to suggest that a defendant *knew* about a *specific defect* with its product and destroyed records anyway *because it anticipated litigation* involving that defect, even though a particular injury had not yet occurred. However, the Court does not believe that Rupp's testimony shows this was the case here. Rather, it only shows that he is aware that prior incidents, generally, can be admitted against defendants in products liability litigation. It does not show, however, that Rupp *anticipated* any litigation on the basis of a certain defect with an E-Z-GO product, such as litigation involving the PC-4X involved in this case, prior to 2004 when Defendant failed to retain pre-2001 documents.

The cases the Court can find regarding spoliation all deal with information which was destroyed *after* an incident, accident, or injury occurred or after a party had knowledge that litigation was likely going to be initiated in the near future. *See, e.g.*, *Byrd v. Alpha All. Ins. Corp.*, 518 F. App'x 380, 384 (6th Cir. 2013) ("It is undisputed that [Byrd] turned over the oven and caused the glass top range to shatter after he filed a claim with his insurer and was visited by its

7

adjuster, Mr. Palmer . . . [Byrd] does admit that Mr. Palmer told him that [Alpha Alliance] might send someone out to examine the fire damage to his home, particularly to the oven. Thus, at that time, [Byrd] knew, at the very least, that, in the course of investigating his claim, [Alpha Alliance] was interested in a particular piece of evidence (his oven), and that there was a possibility that [Alpha Alliance] might send someone to his residence to examine it. Moreover, [Byrd] himself was aware of the oven's importance in determining the fire's cause, as he had previously observed that the flames were centered on the oven when he entered the kitchen during the fire."); *Meany v. Am. Cas. Co. of Reading, Pennsylvania*, No. 3:11-CV-401-S, 2014 WL 12725815, at *4 (W.D. Ky. Mar. 24, 2014) ("Altec's General Counsel anticipated almost immediately after the accident that Mr. Meany's injuries would result in litigation, and promptly took very specific action: he directed Mr. Chard to travel to Louisville, investigate the accident, and prepare a report. Yet Altec's General Counsel took no steps to preserve post-accident electronic communications that might be relevant to the future litigation it anticipated until it was served with Mr. Meany's complaint, because it "had no reason to preserve" those emails. Such a contention lacks credibility."); *contrast Ross v. Am. Red Cross*, 567 F. App'x 296, 303 (6th Cir. 2014) ("Ross asserts that the Red Cross failed to maintain the DRIR 'despite knowledge that [ ] Ross was likely to file an action against [the Red Cross],' but Ross does not point to evidence demonstrating the Red Cross's awareness of potential litigation prior to March 2009. The district court did not clearly err by crediting the Red Cross's explanation that it inadvertently lost the DRIR prior to learning of Ross's potential lawsuit."); *Perryman v. Postmaster Gen.*, 475 F. App'x 585, 588–89 (6th Cir. 2012) ("According to Gebler, by the time he received the notice [to preserve evidence] he had already discarded his notes from Perryman's interview. Although Perryman asserts that Gebler should have foreseen the need to preserve the notes based on Perryman's emails questioning her non-selection, 'if there was

no notice of pending litigation, the destruction of evidence does not point to consciousness of a weak case and intentional destruction.' It is not disputed that Gebler was not aware of pending litigation or even a pending investigation at the time of Perryman's interview, nor in the days afterward when Perryman sent the emails.") (internal citations omitted).

Plaintiffs argue that "Textron alleges its duty [to preserve] only arose when this specific action was filed. However, this duty is broader than Textron would have the Court believe." [DN 194 at 6.] In support of this argument, Plaintiffs quote case law stating that "[i]t is beyond question that a party to civil litigation has a duty to preserve relevant information ... when that party 'has notice that the evidence is relevant to litigation or ... should have known that the evidence may be relevant to future litigation.'" [*Id.* (quoting John B. v. Goetz, 531 F.3d 448, 459 (6th Cir. 2008)). According to Plaintiffs, then, the phrase "future litigation" means *any litigation* that could arise at any time in the future, even 7 years in the future, when the incident which led to Jordan Jackson's injuries and death occurred. The Court disagrees. Plaintiffs have not cited to any case in which a court found the duty to preserve information to have existed indefinitely due to the possibility of future products liability litigation or even as far back as 7 years before an injury occurred, as in this case.

Plaintiffs also argue that the fact that Textron has not deleted any data pursuant to its policy *since* transferring to TeamConnect in 2004 "should preclude Textron from relying upon such policy as a shield to avoid the admission of relevant evidence." [DN 228 at 4.] The Court does not find this to be particularly compelling, however, in light of Sandra Jack's explanation that the reason Defendant has not deleted information from TeamConnect since making the transfer to it in 2004 is because:

> the Team Connect system has many aspects to it and one of which is processing invoice, and the retention that the corporate office applies to invoice information is

9

> longer than the retention for matters, and so there's not an easy way to remove some information in line with our retention policy and keep information that's in line with the longer retention policy. And there's been lots of different things that have been going on with the database, and they just haven't focused on a way to apply the -- *this is my understanding, that we haven't been able to focus on how to apply the retention policy for the litigation matters to the system that contains information beyond that*.

[DN 228-2 at 29 (Sandra Jack Depo., p. 106–107) (emphasis added).] Moreover, it seems to the Court that the fact that Defendant has not deleted any incidents from *after* 2001 from the TeamConnect database since transferring to it actually demonstrates that Defendant *did not* intend to spoliate evidence. Indeed, 7 of the 10 prior incidents the Court found admissible in this case are post-2001 accidents Defendant retained records for.

Nor does the Court find that Plaintiffs have suffered any ascertainable prejudice, which Rule 37(e) also requires before the Court may impose any remedial measures. According to Defendant:

> Pursuant to this Court's Order of October 24, 2016 [DN 105], E-Z-GO produced to Plaintiffs the "Risk Console" listing of all claims during the period Plaintiffs assert information should have been retained. [See DN 106, Pag ID #1597 (listing matters from 1979 to 2002).] Those lists identified claims by date, name and insurance claim number. Plaintiffs waited almost a year before issuing a subpoena to E-Z-GO's insurer for litigation files.2 After inspecting those documents, Plaintiffs now have six banker's boxes of litigation file material predating the 2004 data transfer. They have received the very information they complain that E-Z-GO did not preserve.

[DN 223 at 7–8.] Plaintiffs have not responded to or refuted this argument. Indeed, 3 of the prior incidents the Court has found admissible as evidence in this case include incidents from *before* 2001.

In sum, the Court does not believe the duty to preserve documents extends as broadly and as far into the future as Plaintiffs argue, and Plaintiffs cite no case to suggest as much. Nor does the Court finds that Plaintiffs have made the requisite showing of prejudice. Accordingly, the Court

10

agrees that, under the standards set by Rule 37(e)(1), Plaintiffs have not shown that evidence of alleged spoliation is admissible at trial.

B. **Negligence**

Plaintiffs make a second argument as to the admissibility of Defendant's failure to preserve incident reports from before 2001 which they focus on strongly in their response to Defendant's motion to reconsider. Specifically, Plaintiffs contend that Defendant's actions in 2004 when it transferred to TeamConnect "constitute[] evidence of Textron's negligence in failing to have an adequate safety program and failing to properly monitor post-sale activities of its products." [DN 228 at 1.] For their negligence claim in their complaint, Plaintiffs allege that Defendant "negligently, carelessly, recklessly, and grossly negligently designed, manufactured, tested, produced, marketed, distributed, and sold the E-Z-GO vehicle, and such negligence, carelessness, recklessness, and gross negligence was a substantial factor in causing the injuries and damages alleged herein." [DN 1-2 at 5.] According to Plaintiffs, their allegation that Defendant got rid of records of incidents from before 2001 is probative evidence on the issue of whether Defendant was negligent in this regard.

In support of this argument, Plaintiffs state:

Textron's own expert, Richard Stern, identified several actions that a prudent manufacturer should complete following the sale of its products. These actions include:

1. Establish/implement a mechanism for users and other to report safety-related concerns;

2. Establish/implement a process to follow-up on alleged safety concerns;

3. Establish/implement a process to proactively become aware of potential safety-related concerns;

4. Establish/implement a process to ensure compliance with post-sale regulatory reporting requirements; and,

11

> 5. Establish/implement a process to appropriately address safety-related issues proactively (future production), reactively (product recall of past production), or both.

[DN 228 at 7 (quoting DN 118-6 at 10 (Stern Report)).] According to Stern, "**a prudent manufacturer would take those steps to result in a reasonably safe product.**" [*Id.* at 8 (quoting DN 133-2 at 21 (Stern Deposition)).] Additionally, Plaintiffs state that "Rule 30(b)(6) designee, James Fisher, agreed that Textron had a duty to conduct a product safety program, and he claimed that one was in existence right before 1998 . . . Fisher also testified that his role on the current product safety committee was to provide the committee with data on 'accidents that occur in the filed with this product.'" [*Id.* (citing DN 228-5 at 11, 20 (Fisher Deposition)).] According to Plaintiffs "[b]y purging the pre-2001 incident data that had been compiled in the Corporate Law Pack system, Textron breached its duty to properly monitor posts-sale activities of its products. The destruction of this critical information also shows that Textron breached its duty to have an adequate product safety program." [*Id.* at 8–9.]

The Court disagrees with Plaintiffs, however, that the above-cited materials from Stern and Fisher are probative of Plaintiffs' contention that Defendant breached a duty to adequately monitor post-sale activities or a duty to have an adequate safety program. Plaintiffs do not explain how Defendant's failure to retain documents shows that they failed to abide by the standards identified by Stern, including having a mechanism for reporting safety concerns, a process for following up on those concerns, a process to become proactively aware of those concerns, a process to ensure compliance with post-sale reporting requirements, or a process to address safety-related issues proactively and reactively. Failure to retain documents older than three years does not demonstrate a failure to follow the above guidelines.

But perhaps more importantly, the Court does not see how the purge of pre-2001 records is probative of Plaintiffs' claim that Defendant "negligently, carelessly, recklessly, and grossly negligently designed, manufactured, tested, produced, marketed, distributed, and sold the E-Z-GO vehicle, and such negligence, carelessness, recklessness, and gross negligence was a substantial factor in causing the injuries and damages alleged herein." [DN 1-2 at 5.] Plaintiffs do not explain how Defendant's failure to retain pre-2001 incident records constitutes negligence in designing, manufacturing, testing, producing, marketing, distributing, or selling the PC-4X such that it "was a substantial factor in causing the[ir] injures and damages." [*See id.*] Plaintiffs do not cite a case, and the Court cannot find one, in which a negligence theory of products liability was alleged on the basis of a company's failure to retain incident records. Rather, in the Court's view, this is simply a reiteration of Plaintiffs' spoliation argument. Finding this evidence irrelevant to Plaintiffs' negligence claim as it is presented in their complaint, the Court agrees that it is inadmissible.

## CONCLUSION

For the reasons explained in detail in this Memorandum Opinion, the Court adheres to its Order **GRANTING** Defendant's motion to reconsider, [DN 225 (July 31, 2018 Order).] Accordingly, evidence of Defendant's retention, or lack thereof, of records of incidents involving its vehicles from before 2001 will not be permitted at trial.

Date:

cc:   Counsel